UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CRIMINAL NO.  1:05-CR-456-TCB-LTW

UNITED STATES OF AMERICA,

        Plaintiff,

v.

MATTHEW BEVAN COX,

        Defendant.

                    /

FILED IN CLERK'S OFFICE.
U.S.D.C. Atlanta

FEB 2 2 2010

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

## MOTION FOR SPECIFIC PERFORMANCE OF PLEA AGREEMENT

**COMES NOW,** the defendant, Matthew Bevan Cox, (hereinafter referred to as "Cox", proceeding pro se, and hereby respectfully moves this Honorable Court to require the Government to provide specific peformance of his plea and cooperation agreement, pursuant to Fed.R.Crim.P. 11(e)(3), 18 U.S.C.A.; Title 28 U.S.C. § 1361; and the Fifth Amendment Due Process Clause of the United States Constitution. In support thereof, Cox asserts the following:

### I. INTRODUCTION

This motion seeks an order from the Court compelling the Government to **fully evaluate** the post-sentence cooperation rendered by Cox in three (3) different scenarios:

First, an investigation of a multi-million dollar mortgage fraud in the Middle District of Tennessee, which included assailants Tracy Hunter, Alicia King, Amanda Gardner  and Omar Mellow.

Second, the dismantling of a fraudulant, non-profit Down Payment Assist-
ance Program (hereafter referred to as DAP) that also occurred in the Middle
District of Tennessee.

Third, multiple national television interviews informing the public about
the "Harsh Realities of Committing Mortgage Fraud." The interviews were consented
to by Mr. Cox, at the suggestion of Mrs. McKenzie.

Mr. Cox requests the government to make a good faith determination (inform-
ing the Court of the nature and extent of the assistance rendered) as to whether
this post-sentence cooperation qualifies as "substantial assistance" for purposes
of Fed. R. Criminal Procedures 35(b). The Facts and Memorandum of Law outlined
below will show that Cox has indeed provided post-sentence assistance that was
highly valuable to the United States, and the government is obligated in accord-
ance with the cooperation agreement, to evaluate said assistance and determine
in good faith if a sentence reduction is warranted.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. THE OFFENSE OF CONVICTION.

1. Various federal grand juries in different districts names Cox in multiple
count indictments, which were charged in pertinent part: Conspiracy to commit bank
fraud, wire fraud and social security fraud and identification document fraud, in
violation of Title 18 U.S.C §371 [MD/FL Count One]; Bank fraud, in violation of
Title 18 U.S.C. §1344 [ND/GA Count Eight]; Conspiracy to commit wire fraud, bank
fraud, social security fraud, aggravated identity theft, identification document
fraud, in violation of Title 18 U.S.C §371 [MD/TN Count One]; Aggravated identity
theft, in violation of Title 18 U.S.C. §§1028(a)(1) and (b) [MD/TN Count Two]; and
False statement in application and use of passport, in violation of Title 18
U.S.C. §1542 [MD/TN Count Three].

B. THE PLEA AND COOPERATION AGREEMENT.

 1. On March 28, 2007, Cox entered into a written plea and cooperation agreement with the Government. The agreement stated that Cox plead guilty to the aforementioned counts, and also outlined the following stipulations:

> The Defendant agrees to cooperate truthfully and completely with the Government, including being debriefed and providing truthful testimony at any proceeding resulting from or related to cooperation.

> The Government agrees to make the extent of **any** cooperation by the Defendant known to the sentencing court should the Defendant decide to cooperate. If the cooperation is completed before sentencing and the Government determines that such cooperation qualifies as "substantial assistance" pursuant to Title 18, United States Code, Section 3553(a) and/or Section 5K1.1 of the Sentencing Guidelines, the Government **will consider** whether to file a motion at sentencing recommending a downward departure from the applicable guideline range. If the cooperation is completed after sentencing and the Government determines that such cooperation qualifies as "substantial assistance" pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure, the Government **will consider** whether to file a motion for reduction of sentence. In either case, the Defendant understands that the determination as to whether he has provided "substantial assistance" rests solely with the Government. Good faith efforts by the Defendant that do not substantially assist in the investigation **or** prosecution of another person who has committed a crime will not result in either a motion for downward departure or a Rule 35 motion.

See Plea Agreement at ¶12 (emphasis supplied). [Note: Cox is not challenging the Government's discretion in determining whether or not a Rule 35(b) reduction is appropriate in light of the post-sentence assistance described below, but is rather asserting that **no determination has been made** concerning said assistance. The Government has neglected to review Cox's cooperation in order to

3

assess if it rises to the level of "substantial assistance" for purposes of Fed.R.Crim.P 35(b). This violates Cox's plea and cooperation agreement and requires a remedy.]

## C. THE SENTENCING PROCEEDING.

1. On November 16, 2007, Cox appeared for sentencing in the instant offense. At the hearing, the Government made mention of Cox's ongoing cooperation by stating, "The Government is recommending the low end of the guidelines, which is just over 26 years. And the defendant is also -- if the Middle District of Tennessee and the Middle District of Florida do charge individuals, he has cooperated and he certainly should be -- if that cooperation continues with them, **he certainly should be considered at that time for a Rule 35** if he continues to provide substantial assistance. And in that way, certainly, his sentence should be adjusted." See Sentencing Transcript at page 36, lines 6-15 (emphasis supplied). Nevertheless, without the benefit of a §5K1.1 reduction, the Court sentenced Cox to a total term of 316 months (26-plus years) imprisonment, to be followed by a five (5) year term of supervised release. The Court also imposed a criminal monetary judgment of $6,000,000, less the net proceeds from various seized assets.

## D. DEFENDANT COX'S SUBSTANTIAL ASSISTANCE.

1. After his arrest, Cox immediately began cooperating with the Government. He met with various Agents from various agencies. Cox provided detailed information about the following schemes.

4

The multi million dollar mortgage fraud, committed in the Middle District Of Tennessee. Mr. Cox outlined the criminal activities of the four individuals...

a. Tracy Hunter: Mr Hunter was a general contractor and real estate investor who, on several occasions, acquired inflated mortgages through fraudulent means. This was accomplished using fake social security numbers, counterfeit W2's and pay stubs from fictitious companies, falsified rental verifications, spurious bank accounts, and bogus credit histories. Each time, at the closing of these properties, approximately $30,000 to $50,000 was divided between Hunter, Cox, and other co-conspirators. Hunter readily participated in these criminal activities and was able to acquire sizable assets from his illegal endeavors.

b. Alicia King: Ms. King worked as a loan processor for Abstract Mortgage in Nashville. On numerous occasions, King acquired mortgage loans on properties she knew to be artificially inflated. Furthermore, King was fully aware that the employment and rental verifications used to obtain these mortgages was fictitious, and also that Cox was operating under various assumed identities. King would charge Cox $8,000 to process the pinchback loans, while the normal (legal) rate was $2,000. After the properties were closed, Cox would pay King an additional $2,000. By a safe estimate, King was responsible for over $1.5 million in fraudulent loans. To this day, she gleefully enjoys the proceeds of her unscrupulous activities.

c. Omar Mellow: Mr. Mellow was a private real estate investor and a former VP for Bank of America. Mellow routinely assisted in artificially inflating the value of properties in the JC Napier (Nashville) subdivision, by recording legitimate sales at triple the value of the purchase. For example: A home would be purchased for $60,000, then recorded at $180,000. The property would then be refinanced in order to obtain a loan of approximately $150,000. The owner of the home would be paid and the difference pocketed between Mellow and Cox. Mellow was involved in numerous such deals, and he has maintained his share of the profits.

d. Amanda Gardner: Ms. Gardner, a former love interest of Cox's, worked for the Nashville Restoration Project, which targeted low-income neighborhoods, including the aforementioned JC Napier sub-division. Gardner verified employment histories, identifications, and social security cards which she knew to be fake. She refinanced homes and even purchased luxury vehicles using false documents. Gardner alos transferred warranty deeds to properties at in inflated rates. In addition, Gardner brokered multiple mortgages for properties that were synthetically inflated.

Cox's information against these individuals exposed their activities and launched a large-scale federal investigation, Cox's Presentence Investigation Report (PSI) verifies his assistance in this regard by stating the following:

6

> Cox moved to Nashville, Tennesse, where he lived under
> stolen identities and continued his fraud. From March
> 2005 through November 17, 2006, Cox conspired with
> others, including the following participants: Amanda
> Gardner, JG, Andrew Hereford, Tracy Hunter, Jonathan
> Kaiser, and Jimmie Stone. They defrauded real estate
> title insures, mortgage lenders and other lenders in
> this scheme. Cox and others purchased over twenty
> properties in Nashville, Tennessee, at the true market
> value without making payments to pay off the seller's
> existing mortgages. Cox and his coconspirators fraud-
> ulently inflated the true purchase price for many of
> these properties by approximately $100,000 or more
> using tax stamps on the warranty deeds to reflect the
> inflated prices when no money actually changed hands.
> Cox used...unqualified straw borrowers including Amanda
> Gardner, JG, Andrew Hereford, Tracy Hunter, Jonathan
> Kaiser, Jimmie Stone, and [the] Nashville Restoration
> Project...to obtain refinance and other mortgage loans
> on properties at inflated amounts.

See PSI at ¶42. The information provided by Cox was previously
unknown to law enforcement officials and sparked an extensive
federal investigation. The investigation included various interviews
with the aforementioned assailants. As a result of Cox's assistance,
DAP was dismantled. Furthermore, S/A Brockhouzin was able to accum-
ulate enough incriminating evidence against the assailants to feel
confident in securing a federal indictment. S/A Brockhouzin took
the results of the investigation to Assistant United States Attorney
Byron M. Jones, requesting the information, coupled with Cox's
testimony, would be taken to a federal grand jury. S/A Brockhouzin
desired an indictment for at least five(5). However for reasons
unknown to Cox, the federal prosecutors chose not to pursue the
matter further, although CoX had handed the assailants over on a
silver platter.

Also Mr. Cox divulged information about Alicia King and her brothers scam to get unqualified buyers their down-payments in order to secure a mortgage. King and her brother created a ficticious non-profit organization (DAP), which appeared to provide buyers with the down-payments for mortgages that were financed through Abstract Mortgage and Title Company, (which was owned and operated by King and her brother). Here is how the scheme worked.

DAP would qualify people for down-payment assistance of up to 20%. Abstract Mortgage and Title would illegally inflate the value of the home, with fraudulent appraisals and sale contracts. So what appears to be an 80% loan on a home, would actually be a 100% loan. So all the money DAP gave for a down-payment was automatically recouped at closing, with a profit. Weeks after Cox outlined this entire scheme to the Secret Service, Agent Peacock told Cox's attorney, "That even though the Secret Service were not able to convince the Tennessee U.S. Attorney to indict - they were able to shut down the unscrupulous non-profit." Most likely preventing millions more in fraudulent loans.

At the persuation of Mrs. McKenzie, Cox consented to do two national television interviews, with the understanding that giving a public Service Announcement, in them, would go a long way in the determining factors of substantial assistance.

First the television national news magazine "Dateline" contacted Millie Dunn to request an interview with Mr. Cox and Mrs. Dunn agreed not to do the interview, because of how the show

8

ran the initial story of Mr. Cox. McKenzie called Mrs. Dunn about
the Dateline story on Mr. Cox. McKenzie stated, "I can not tell
Mr. Cox what to do...but doing an interview with Dateline would go
a long way toward a 5K1 for Mr. Cox." She even provided Mrs. Dunn
with the name and phone number of the show's producer. Mr. Cox
only agreed to do the interview because he felt it would benefit
him. The program re-aired Cox'a story, with Cox's interview and
statements about the stiff punishments of Mortgage Fraud.

The second national television interview Mr. Cox did, was a
show that highlights America's most notorious financial crimes and
criminals called, "America Greed." They contacted Mr. Cox after he
was sentenced and housed at the Coleman Federal Correction Complex
Medium. They requested an interview. Cox conferred with Mrs. Dunn
on whether or not he should do it. It was determined that it would
behoove Mr. Cox to do the interview. In fact after the show aired
on Cox,    McKenzie emailed Mrs. Dunn that "the Amrican Greed
Segment on Cox is to air next week. From the link below, it looks
like they have brought our new info to educate the public. Plan to
add that to what we already have to present, within the office."

### III. SUMMARY OF THE ARGUMENT

The Government's breach of the specific terms of Cox'a plea
and cooperation agreement is the subject of this petition. The
primary question herein is whether the Government can proceed in
good faith to deny Cox the benefit of his cooperation by neglecting
to fully evaluate the assistance provided by Cox in the **investigation**

phase of the aforementioned individuals, as well as the interviews and Public Service Announcements in his nationally ran television interviews, as will be discussed more fully below, the right of the Government to refuse to evaluate a defendant's assistance and to further deny him a Rule 35(b) motion, which has clearly been earned, is governed by principles of good faith that necessarily limits the discretion allowed the Government.

The facts above clearly show that the Government has, in accordance with the cooperation agreement, conceded to allow Cox to cooperate after being sentenced, yet the Government has failed to fully and faithfully evaluate the cooperation described above or apprise this Court of the nature and extent of said cooperation, by way of the appropriate sentence reduction recommendation under Rule 35(b).

Cox has provided cooperation with the Government in exchange for substantial assistance consideration. It is Cox's position he has already fulfilled the requirements which would normally warrant a sentence reduction under Fed.R.Crim.P. 35(b) (see below). The Government's failure to evaluate the cooperation outlined above has been without rational justification and has violated the very agreement which prompted the offer of cooperation in the first place. Furthermore, the Government's refusal to honor its agreement has major Due Process implications. Cox should be entitled to an order from this Court requiring the Government to fully evaluate the cooperation rendered, which was unquestionably valuable and eliminated the continuation of unbridled mortgage fraud, and informed the public of the harsh penalties of committing those type of crimes.

## IV.  ARGUMENT AND MEMORANDUM OF LAW

### A. APPLICABILITY OF MANADAMUS.

Title 28 U.S.C. § 1361, Action to Compel an Officer of the
United States to perform his or her Duty, provides that:

> The district court shall have original juris-
> diction of any action in the nature of mandamus
> to compel an officer or employee of the United
> States or any agency therof to perform a duty
> owed to the plaintiff.

See also Smallwood v. United States, 988 F.Supp. 1479 (S.D.
Ga.). The issuance of a writ of mandamus under Section 1361 is
admittedly an extraordinary remedy but is also a matter of judicial
discretion. Smallwood, 988 F.Supp. at 1478, citing Carter v. Seamans,
411 F.2d 767, 773 (5th Cir. 1969) (citations omitted), cert. denied,
367 U.S. 941, 90 S.Ct. 953, L.Ed.2d 121 (1970).

Under this rule, to be entitled to relief, a plaintiff must
show (1) a clear right to the relief he requests, (2) a clear
non-discretionary duty in the respondent to perform the action
sought, and (3) the absence of an adequate alternative remedy.
Mallard v. United States District Court, 490 U.S. 296,

11

309, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989); Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34, 101 S.Ct. 188, 189, 66 L.Ed.2d 193 (1980). The burden is on the plaintiff to establish each element. Mallard, 490 U.S. at 309, 109 S.Ct. at 1822.

As such, Cox asserts that: (1) he has a certain right to the relief requested due to the clear-cut substantial assistance provided and the obvious benefit to the Government; (2) the Government has a clear and non-discretionary duty to perform the action sought, per the cooperation agreement, which obligates the Government to consider (i.e., evaluate in good faith) Cox's cooperation to determine if a Rule 35(b) reduction is warranted; and (3) due to the extraordinary circumstances of this case (i.e., the sheer weight of the assistance provided, and the fact that Cox and former defense counsel have tried unsuccessfully to nudge the Government toward good faith), no other remedy exists other than this Court requiring the Government to perform its obligation under the cooperation agreement.

Accordingly, this Court has judicial discretion, under Title 28 U.S.n. §1361, to order an Officer of the United States (in this case Assistant United States Attorney Gale McKenzie, Northern District of Georgia) to perform her full duty under the terms of the cooperation agreement at issue.

12

## B. SUBSTANTIAL ASSISTANCE CRITERIA.

Federal Rule of Criminal Procedure 35 states in pertinent part:

**(b) Reducing a Sentence for Substantial Assistance.**

(1) **In General.** Upon the government's motion made within one year of sentencing, the court may reduce a sentence if:

(A) the defendant, after sentencing, provided assistance in investigating or prosecuting another person; and

(B) reducing the sentence accords with the Sentencing Commission's guidelines and policy statements.

(2) **Later Motion.** Upon the government's motion made more than one year after sentencing, the court may reduce a sentence if the defendant's substantial assistance involved:

(A) information not known to the defendant until one year or more after sentencing;

(B) information provided by the defendant to the government within one year of sentencing, but which did not become useful to the government until more than one year after sentencing; or

(C) information the usefulness of which could not reasonably have been anticipated by the defendant until more than one year after sentencing and which was promptly provided to the government after its usefulness was reasonably apparent to the defendant.

(3) **Evaluating Substantial Assistance.** In evaluating whether the defendant has provided substantial assistance, the court may consider the defendant's presentence assistance.

The term "substantial assistance" is not per se defined in the Rule. United States Sentencing Guideline 5K1.1, and its post-sentence equivalent Fed.R.Crim.P. 35(b) more specifically authorizes the district court to depart from the Guidelines when "the defendant has provided substantial assistance in the

13

investigation **or** prosecution of another person who has committed an offense" (emphasis supplied)[1]. This provision has been interpreted to mean that a defendant's assistance must yield results (as is the case here), and not merely represent an effort in good faith to attempt to assist. United States v. Gonsalves, 121 F.3d 1416, 1419 (11th Cir. 1997).

Also, under the terms of Fed.R.Crim.P. 35(b), a reduction in sentence is only allowed if the defendant's substantial assistance related to either the investigation of another person or the prosecution of another person. Indeed, our Circuit has acknowledged that Rule 35(b) reductions are allowed only in such incidences. See, e.g., United States v. Chavarria-Herrara, 15 F.3d 1033, 1037 (11th Cir. 1991). Therefore, for a thorough analysis, it is important to first interpret the meaning of the terms "investigation" and "prosecution."

---

[1] The injunctive "or" is significant here because the aforementioned assailants were never indicted federally. However, substantial assistance reductions are not limited to arrests or convictions. Indeed, the plain language of Rule 35(b) allows a defendant to receive a sentence reduction when he or she has provided substantial assistance in the "investigation **or** prosecution of another person," Id. (emphasis supplied). This is particularly the case here where Cox has provided more than enough information which would normally climax in the indictment and conviction of the assailants. Cox remains perplexed as to why the Government chose not to pursue the matter into the prosecution phase when clearly there were numerous individuals responsible for millions in mortgage fraud who were easily indictable thanks to Cox's information. Nevertheless, Cox maintains that his assistance in the **investigation** of the above-mentioned assailants warrants Rule 35(b) consideration.

An investigation exists when the authorities are engaged in a systematic inquiry into the criminal activity of a subject. (Black's Law Dictionary, 830, 7th Ed. 1999.) An investigation, by definition, always entails a target, and if Rule 35(b) is to apply the target must be another person. For example, Rule 35(b) would apply if the authorities were investigating a suspected drug dealer and the defendant provided information regarding the time and place of drug trafficking or sales by that individual. See United States v. Bisbon, 184 F.Supp.2d 1379 (S.D. Ga. 2002).

A prosecution, on the other hand, is a "criminal proceeding in which an accused person is tried" for crimes they allegedly committed. (Black's Law Dictionary, 1237, 7th Ed. 1999). Like an investigation, a prosecution necessarily entails a target, which under the terms of Rule 35(b) must be another person. Building on the previous example, Rule 35(b) would apply if the authorities prosecuted the suspected drug dealer, and the defendant testified on behalf of the authorities at trial. See Bisbon, Id. at 1382.

In this case, the assistance rendered by Cox has clearly exceeded the cooperation described and discounted in Gonsalves, supra, and has without question provided useful information that launched the investigation of the above-mentioned assailants. There can be no argument as to the veracity of the cooperation supplied by Cox, which included extensive debriefings and an expressed willingness to testify to a federal grand jury or in open court should the need arise. Indeed, a careful review of the

15

cooperation described above will reveal that substantial
assistance has been rendered, and Cox is deserving of
consideration under Fed.R.Crim.P. 35(b).

## C. CONTRACT ANALYSIS.

In United States v. Pielago, 135 F.3d 703, 709-10 (C.A.11
(Fla.), 1998, our Circuit noted, "The construction of proffer
agreements, like plea agreements, are governed generally by the
principles of contract law, as have been adapted for the purposes
of criminal law. See United States v. Weaver, 905 F.2d 1466, 1472
(11th Cir. 1990); Rowe v. Griffin, 676 F.2d 524, 528 (11th Cir.
1982)(interpreting immunity agreements pursuant to principles
applied to interpreation of plea agreements); cf United States v.
Jefferies, 908 F.2d 1520, 1523 (11th Cir. 1990)("Plea agreements
are interpreted and applied in a manner that is sometimes likened
to contractual interpretation."). "This analogy, however, should
not be taken too far." Jefferies, 908 F.2d at 1523. A "hyper-
technical reading of the written agreement" and "a rigidly
literal approach in the construction of language" should not be
accepted.  In re Arnett, 804 F.2d 1200, 1203 (11th Cir.
1986)(internal citation and quotes omitted).  The written
agreement should be viewed "against the background of the
negotiations." Id.

Courts generally interpret plea agreements according to
principles borrowed from contract law. Jefferies, supra, at 1523.
Because of the necessity of insuring "fairness" to the defendant,

16

however, courts hold the Government to a higher standard than would be applied in a civil contract dispute. For example, "'[a] plea agreement is not an appropriate context for the government to resort to a rigidly literal approach in the construction of the language.'" In re Arnett, 804 F.2d 1200, 1203 (11th Cir. 1986)(quoting United States v. Bowler, 585 F.2d 851, 854 (11th Cir. 1978)). Thus, any ambiguities in the terms of a plea agreement are resolved in favor of the criminal defendant. See Rowe, 676 F.2d at 526 n.4. Furthermore, in interpreting a plea agreement, a court must look to "the defendant's **reasonable understanding** at the time he entered the plea." United States v. Rewis, 969 F.2d 985, 988 (11th Cir. 1992)(emphasis added); see also Arnett, supra, at 1202-03.

A leading criminal procedure treatise illuminates the relationship between contract law principles and broader issues of criminal procedure:

> [Contract rules] have to be applied to plea agreements with two things in mind which may require their tempering in particular cases. First, the defendant's underlying "contract" right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law... Second, with respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights--to concerns for the "honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government." [This means that] both constitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant (or possibly than would be either of the parties to commercial contracts) for imprecisions

17

> or ambiguities in plea agreements... This is particularly appropriate where, as would usually be the case, the Government has proffered the terms or prepared a written agreement--for the same reasons that dictate that approach in interpreting private contracts.

5 Wayne R. Lafave, Jerold H. Israel & Nancy J. King, Criminal Procedure, §21.2(d), a₁₄ 57 (2nd Ed. 1999)(quoting United States v. Harvey, 791 F.2d 294 (4th Cir. 1986).

In the case at bar, a bilateral agreement exists between Cox and the Government; a contract under which both parties are bound. The agreement stipulates that Cox provide substantial assistance (which he has done) and, in exchange, the Government would evaluate said assistance to determine **in good faith** whether a reduction under Rule 35(b) is warranted. It is clearly reasonable for Cox to interpret his agreement as binding the Government to evaluate, then reward him for any substantial assistance provided. Cox asserts that he has met his end of the bargain (by providing clearly useful information), while the Government has reneged by failing to evaluate said assistance.

Furthermore, it is well-settled that "[W]hen a plea rest in any significant degree on a premise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971); United States v. Taylor, 77 F.3d (11th Cir. 1996). Cox insists that his decision to fully cooperate with the Government (a potentially perilous maneuver) was induced with the complete understanding that any cooperation

which he provided would be fully evaluated and considered for a Rule 35(b) sentence reduction. It cannot be argued that the Government's purported commitment to file a substantial assistance motion for Cox, in accordance with any cooperation provided, was the controlling factor in his decision to provide pertinent and highly incriminating information through his own debriefings against high-level white collar criminals. Indeed, why else would Cox risk his own safety if there were not a Rule 35(b) substantial assistance provision associated with this case?

Accordingly, because of the decisions in Taylor, supra, and Santobello, supra, the Government is now bound to completely fulfill its contractual obligation under the agreement at issue, since Cox has so clearly met his.

## D. REFUSAL INCONSISTENT WITH LEGITIMATE GOVERNMENT END.

It is axiomatic that federal prosecutors reliably rewarding defendants for their cooperation is essential to the overall scheme and purpose of the United States Attorney's Office. Put simply, rewarding cooperating defendants ensures future cooperation, which in turn guarantees future indictments and convictions. As such, Cox asserts that the Government's neglect in this case to fulfill its obligation to evaluate and apprise this Court of the nature and extent of his cooperation, with the appropriate recommendation under Rule 35(b), contradicts the general purpose of the United States Attorney's Office and serves no legitimate Government end.

This argument is further substantiated in United States v. Taylor, 77 F.3d 268 (11th Cir. 1996), where the Court concluded:

> In closing, we note that for better or worse, plea and substantial assistance bargains have become an essential part of our criminal justice system. It is in the best interest of the government, as well as the system as a whole, that defendant be able to count on the government keeping the promises it makes in order to secure guilty pleas and assistance from defendants. Those broader interests, as well as each individual defendant's interest in receiving the benefit of his bargain, require that courts stand ready and willing to hold the governemnt to its promises.

Id. at 372 (emphasis supplied).

Also, in United States v. Orozco, 160 F.3d 1309 (11th Cir. 1998), the Court acknowledged that "[t]he government has no reason to refuse to make substantial assistance motions [or evaluations] when appropriate, since it is dependant upon future defendant's cooperation." Id. at 1316, n.11 (emphasis supplied). When a prosecutor, without just cause, neglects to evaluate a defendant's cooperation and determine whether a reduction recommendation is warranted for unquestionably substantial assistance (see above), that refusal contradicts any legitimate Government purpose, and McKenzie's statement to Mrs. Dunn, regarding a sentence reduction, "I do plan on doing something (Rule 35) for Mr. Cox, he's earned it."

In this case, there is no question that a sentence reduction recommendation is warranted, as the cooperation described above clearly rises to the level of "substantial assistance" for purposes of Fed.R.Crim.P. 35(b). The cooperation rendered by Cox was invaluable to the federal authorities' investigation of the afore-aforementioned assailants. Indeed, because

Cox was relied upon so heavily to provide assistance, the Government now has no legitimate reason for neglecting to grant Cox the full benefit of his cooperation.

## E. THE ISSUE WARRANTS AN EVIDENTIARY HEARING.

Finally, under a combination of the two factors described above - the existence of substantial assistance and the promise to reward it by the Government - Cox has the right to an evidentiary hearing to establish his entitlement to relief. United States v. Holston, 129 Fed.Appx. 563 (11th Cir. 2005)(unplublished). If a defendant alleges and makes a threshold showing that the Government's refusal to file a substantial assistance motion was a breach of a plea or cooperation agreement, an evidentiary hearing and relief may be appropriate. United States v. Gonsalves, 121 F.3d 1416, 1419-20 (11th Cir. 199). Accord United States v. Rojas-Santana, 180 Fed.Appx. 887 (11th Cir. 2006).

Additionally, the Supreme Court has held that allegations of a breach entitle a defendant to an evidentiary hearing unless the defendant's allegations are "palpably incredible" or "patently frivolous or false." See Blackledge v. Allison, 431 U.S. 63, 75-76, 80-82 (1997). Here, it is obvious by the cooperation agreement between Cox and the Government, Cox's reasonable understanding of the agreement (due to the general course of the proceedings and the Government's reference to said cooperation during Cox's sentencing), that the Government's

21

promise to faithfully evaluate any post-sentence cooperation to determine if a reduction is warranted, has been breached. There is no doubt that post-sentence "substantial assistance" has been rendered against the above-named assailants. The Government's neglect clearly violates its contractual obligation with Cox and, at the very least, the law permits an evidentiary hearing in this matter.

**F. RELIEF SOUGHT.**

Accordingly, Cox requests that this Honorable Court issue an Order requiring the Government to fully and faithfully evaluate the cooperation described above. Then, assuming arguendo that the Government files a Rule 35(b) petition, Cox requests that this Honorable Court reduced his sentence to a total of not more than 160 months, an amount appropriate considering the magnitude of the assistance provided, and in line with similarly situated defendants.

Lastly, Cox respectfully asks the Court to first order the Government to file a Response to the claims cited herein prior to the Court issuing a ruling on the instant petition. In United States v. Stamboulides, 147 Fed.Appx. 65 (11th Cir. 2005), the Eleventh Circuit held, "in that the district court denied appellant's motion [similar to the instant petition] without the benefit of the Government's response, we cannot tell whether the Government refused to file a Rule 35(b)(2) motion [or in this case evaluate the cooperation rendered] because none of the

requirements of Rule 35(b)(2)(A), (B) or (C) were satisfied or, if they were satisfied, whether the Government's refusal to file such a motion was not rationally related to a legitimate government end. These are issues the district court should address in the first instance." Id. at 147 Fed.Appx. 67.

## V. CONCLUSION

WHEREFORE, for the reasons stated above, Cox prays that this Honorable Court will grant the relief requested in this motion, and/or any other relief that this Court may deem appropriate.

Respectfully Submitted,

Matthew B. Cox
Reg. No. 40171-018
FCC Coleman-Medium
P.O. Box 1032
Coleman, Florida 33521-1032

23

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY,** that a true and correct copy of the foregoing document has been furnished by U.S. Mail, postage pre-paid, this _16th_ day of February, 2010, to the following:

Gail McKenzie, AUSA
U.S. Attorney's Office
75 Spring Street, S.W.
Suite 1800
Atlanta, GA
30335

Matthew B. Cox
Reg. No. 40171-018
FCC Coleman Medium
PO BOX 1032
Coleman, FL 33521

**Millie Dunn/GANG/11/FDO**          To    "Belinda Rogers" <belinda_rogers@fd.org>
01/02/2009 03:48 PM                  cc

                                     bcc

                              Subject  Fw: [BULK]  Gale McKenzie


Please print and mail to Matt Cox.

Thanks.

Millie Dunn


**From:** "McKenzie, Gale (USAGAN)" [Gale.Mckenzie@usdoj.gov]
**Sent:** 01/02/2009 03:16 PM EST
**To:** Millie Dunn
**Subject:** FW: [BULK]  Gale McKenzie

If you didn't know, the American Greed segment on Cox is to air next week. From the link below it looks like they have brought our new info to educate the public. Plan to add that to what we already have to present within the office. Gale

**From:** ANDREA PEACOCK (FRA) [mailto:Andrea.Peacock@usss.dhs.gov]
**Sent:** Thursday, January 01, 2009 3:57 PM
**To:** McKenzie, Gale (USAGAN)
**Subject:** Fw: [BULK] Gale McKenzie
**Importance:** Low


Gale,

Click on the link below. You are on the American Greed website. It's a very good picture. It looks like the episode will air next week, Jan 7th.


Have a wonderful 2009!

Andrea
Andrea Peacock, Special Agent
United States Secret Service
Frankfurt Resident Office
Office: +49-69-7535-3763
Mobile: +49-171-352-7826

**From:** Roman & Andrea Peacock
**To:** ANDREA PEACOCK (FRA)
**Sent:** Thu Jan 01 14:58:37 2009
**Subject:** [BULK] Gale McKenzie
http://www.cnbc.com/id/26905349?slide=14